Good morning, Your Honors. Jeffrey Baird representing Ivan Alekseyevets. Let me jump to the substance. We have a medical expert, Dr. Spence, who reviews all the evidence of record and says it's a bit unfair to say he's exaggerating. There's a lot of somatization. As far as the depression, it's too hard a task to figure out. He's left open the question, how do you especially because we have a Russian speaker, and Russian speaking may have compromised some of the treatment notes or the understanding of this patient. So the agency's own expert, Dr. Spence, gave enough information to trigger the application of the psychiatric review technique form to document and go through what's going on, structure the mental impairment, and seek further consultative examination, perhaps with a Russian speaking psychiatrist that can work with pain, interacting with mental impairments, which is what somatization is. It's a form of mental impairment under the Diagnostic Statistical Manual. So there's enough evidence that there were mental impairments that probably were severe that the ALJ should have pursued the structuring of those. Well, there has to be a color book claim, right? Yeah, color book's pretty low. And so I'm a little bit, my, I think, do we call this Kaiser? What are you experts? Kaiser, yeah. Kaiser, all right. So we've got Kaiser, which is 9th Circuit President, correct? We've got Shinseki, which is U.S. Supreme Court, correct? Yes. And then we have Molina, which is 9th Circuit, which is after Kaiser, right? True. So tell me how you see all those three fitting together, because obviously it's to your advantage to argue structural error and that you can't apply the harmless error, but clearly Kaiser can't ignore Shinseki. And so my understanding is, I think, that if a colorable, if you make a colorable showing, then Kaiser said that was not harmless. Correct. And so, but it still does not do away with the harmless error analysis. Right. Well, Molina and Ludwig, which we talked about yesterday, are simply collapsing a more intricate mental process or, since this is a federal court, it's not a thought experiment, it's a three-part practical test. Hypothetically, at credit, evidence is true. Hypothetically, apply it through the disability assessment process. Then, if a reasonable ALJ could come to a different determination, the error would be harmful. If not, then the error would be what it talks about. If we hypothetically credit as true, would it make a difference? So it's really a three-part test to come to the conclusion that Molina and Ludwig correctly point to. Is it consequential? But you've got to be able to show that the mental impairment is colorable, correct? True. But I take it colorable is defined in Anglo-American law as barely plausible. Well, colorable has some squish room, and colorable to one judge may not be colorable to another judge. So I think that's where we, you know, we see colorable in other things. We see them on habeas and COAs and things along those lines. So it's more than just it's so. There's got to be, it's got to be a claim of some substance. True. But here we work in a context of the five-step sequence, and one of the steps is severity. And severity is defined as a de minimis threshold. It seems to me that you and the commissioner are arguing at two different levels, and we have to figure out which one is correct. Because you're arguing colorable claim means whatever you bring forward. And you don't start to engage in the analysis on credibility and determining how, the sufficiency of that evidence. It's just what is brought forward. The commissioner seems to argue, no, no, the ALJ can go through that process in determining the first instance whether there's a medically determinable mental impairment by looking at the totality of all of the evidence and saying, I'm not going to give credit to this testimony. I'm not going to give credit to that testimony. But this testimony, I think that's just great stuff. And so I'm going to credit that. And after crediting that, there is no colorable claim. What you want to say is, ignore that. These other two witnesses that the ALJ ultimately find lack credibility altogether, those witnesses provide that colorable claim. They at least provide colorable claim because it's a five-step sequence, each of the steps in sequence. The first step is, is there substantial gainful activity? The second step is, is there any severe impairment? And for assessing severity, it's a very low threshold. And part of assessing the severity would be, for example, going through a psychiatric review technique to see if there's anything structurally that might be going on with the mental impairment. But the regulation kind of reads that first you have to make this finding. If we determine that you have a medically determinable mental impairment, we must specify and you go on in the technique. I mean, it seems temporal, right? So it seems like first you go through the full analysis of whether or not there is a medically determinable mental impairment. But it does kind of stand things on its head. It's true the psychiatric review technique functions in two parts. Part one is let's assess medical determinability. And then part two, let's look at the 4B criteria to see if it's severe. And then later, the ALJ would assess the residual functional capacity and take all these things into account. Right. And if the ALJ finds no medically determinable mental impairment, it seems it makes little sense to go forward from there. Well, I think the ALJ has to go through the psychiatric review technique is a series of steps even in assessing medical determinability. They have to assemble what the doctors are, what they've said, if there's enough there to think that there may be a mental impairment worth exploring. What you're suggesting, Your Honor, is that the ALJ has to do the entire analysis of the case, all five steps, then go back to step two. And the point of having the severity step is should the case go forward on these plausible grounds? Well, no, but I think that what you're suggesting is if I say so, that's enough to go forward. Colorable, to me, seems to indicate some sort of analysis to get to that point, to root out the frivolous, the ridiculous. And there are things in here that are say, well, yeah, you brought this forward, but it's still all only based on her husband saying this or whatever, but it's only based on what she told her husband. There's a lot of talk always like how strong is someone's conclusion if it's only based on the subjective report of the claimant? In the Alexeyevitz case, we do have diagnoses of mental impairments. We have even Dr. Spence saying it looks like somatization. Those would be suggestions that there's an ongoing mental impairment that needs structural evaluation under the technique. But the point is that step two, you could find something severe and then shoot down other doctors later at the RFC stage or figuring out how to weigh the medical evidence later. Do you want to save any time? Because we've cut down time on these because we're seeing so much of you. Good morning. Good morning, Your Honors. I'm Summer Stinson, and I represent the ALJ Commissioner. This court should affirm the ALJ because Ivan Alexeyevitz is able to perform work. The ALJ's decision is supported by substantial evidence, and this court should affirm it. Well, why don't you just jump to this colorable claim issue? Absolutely. Because it has to be a colorable claim to get to the test that he wants. That's what the law says. So what's involved in that? So the ALJ here resolved the medical evidence regarding Mr. Alexeyevitz's alleged mental impairments. The ALJ was not required to document his process using the psychiatric review technique form. He did use the psychiatric review technique, which is the, that is the whole regulation. The part that we're focused on is the actual form, the documentation of the form. That is the part that regulation 20 CFR 416.920A subsection E mentions. And as Judge Seabright explained, that only comes into play if the ALJ determines that the claimant has a medically determinable mental impairment. In other words, that's the same as what Judge Callahan calls a colorable claim? He makes a colorable claim? That is what Kaiser holds, yes. That is not the language in the regulation, but that is what Kaiser holds. But those two phrases are talking about essentially the same thing. That is what, yes, that's what Kaiser says. However, in Kaiser, the ALJ, and this is in the Kaiser decision, that the Kaiser decision on page 724 cited the ALJ, and the ALJ found that the quote, the claimant's bipolar disorder was a medically determinable impairment. Wait a minute, 724? 724 in Kaiser. Go ahead. That means that in Kaiser, they found fault with the ALJ not using the documentation of the form because the ALJ actually found that the bipolar disorder was a medically determinable impairment. That distinguishes Kaiser from the situation we have here where the ALJ here specifically found that there was no medically determinable impairment of the mental, alleged mental impairment. All right, but Mr. Baird says the cart comes before the horse or the horse before the cart, meaning you don't go through that analysis. It's just whether or not there is a claim, whether there's enough evidence before you go through an evaluation of that evidence. And if so, then you have to go through the whole technique if there's a colorable claim. And that is not what the regulation says. The regulation does, there is a difference between the special technique and the documentation of that technique in the form. And the special technique is the overarching looking to see what have doctors said? Do I agree with these doctors, weighing the doctors? Then if after that, and this is against 20 CFR 416.28, subsection B1, it says if we determine that you have a medically determinable mental impairment, we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment and document our findings in accordance with paragraph B of this section. So therefore, the regulation contemplates that you will first go through the medical evidence, as the ALJ did here, and determine whether or not you're accepting this medical evidence. And then if you find, after you go through that analysis, that there's a medically determinable mental impairment, then you go to the documentation form. Or a colorable claim of such an impairment. Right. So what did the ALJ consider here, and what did the ALJ say about what was considered? So here the ALJ properly found that he had no medically determinable mental impairment. He rejected Dr. Cavaney's opinion, finding that his conclusions were inconsistent with other substantial medical evidence. And he adopted the findings of the medical expert, Dr. Spence. When Dr. Spence was asked if the claimant had any limitations based on mental impairments, he said no. And that is, I believe, at page 36 or 37 of the record. And he cited several specific and legitimate reasons to reject Dr. Cavaney's examining opinion. Because, first, the assessment was vague. There was no testing. A contemporaneous psychological evaluation by the claimant's physician assistant, who did speak Russian, found no limitations at all. And Dr. Tran's October 2008 neurological examination did not show any signs of a mental disorder. Well, now, what are you saying? The ALJ relied on those reports to make a, in effect, find that this applicant's case didn't meet the threshold requirement for the PRTF form? Is that what you're saying? That is correct, Your Honor. In other words, there's a certain threshold that has to be crossed before that test even applies. And if you look at Dr. Cavaney's assessment, he actually relies heavily upon plaintiffs. And he says Dr. Alexievitz focuses on his pain as his problem and feels he has faced increasingly serious mental health concerns due to pain. And that's at the record at 894. So Dr. Cavaney, who did not speak the language of the claimant, basically took what he could gather from the claimant and just took it at face value. And the ALJ here did find that the claimant was not fully credible. So, therefore, those are the reasons that the ALJ found that he rejected Dr. Cavaney's examining opinion. Okay. So Mr. Alexievitz's alternative interpretation of the evidence is insufficient to justify overturning the ALJ's decision. So long as there is more than a scintilla of evidence to support the ALJ's decision and interpretation of the evidence, the ALJ's interpretation should be affirmed. And the ALJ properly found that Mr. Alexievitz was not disabled within the meaning of the act. And the commissioner asks that this court affirm the ALJ's decision. Thank you. Any further questions by the panel? No. Thank you. Okay. She's doing it backwards. The only reason to have a psychiatric review technique is to get an initial handle on possible mental impairments. So is that required in every case then? If there's no threshold requirement? The threshold requirement would be colorable. But we know that colorable in this context must mean something less than medically determinable because colorable triggers the test to see if it's medically determinable. Well, but she's not doing it entirely backwards because otherwise they would have to if you have to do it in every test, just the case. You don't have to do it in every case, right? Correct. There's not a medical diagnosis of depression or somatization or whatever in every case. There was here. But if a person just says, I have mental problems, they have to do it in that case. That might not rise to the colorable level, but it might because the whole point of the psychiatric review technique is to explore and structure. I think you're weakening your argument if you say that that would reach a colorable level. But colorable is really low. It triggers investigation. What you're saying, because I say so, is colorable. No, in this context it must be low because we know it's less than medically determinable. How do we know that? Because you have to go through the psychiatric review technique to determine if it's medically determinable and then to determine if it's severe. And we know severe means a de minimis threshold. So colorable must be something below de minimis. Below de minimis? Right. Severity is de minimis, so colorable must be something that triggers the initial investigation and structuring of the mental impairment. Mere testimony, maybe that's not colorable. But here we do have doctors diagnosing, including the medical experts, saying a lot of somatization, language problems, the depression is too hard to sort out. That suggests structure the mental impairment, go for further development getting a psych eval with a Russian speaker. All right. Thank you for your argument. Thank you. This matter is submitted.
judges: Seabright, Tashima, Callahan